LUTHER E. HALL, Judge pro tern.
This is a suit by plaintiff son against his defendant father for the payment “of all proper and necessary support, medical expenses, for the care, health, welfare, and cure, and all general expenses” of the son.
The plaintiff son, Charles S. Elchinger, filed this suit on September 1, 1961 alleging that he is in necessitous circumstances and unable at present to earn a living or to support himself and that on account of his physical and mental condition it is imperative and urgent that he be treated in private *348 hospitals “in order to receive the kind of treatment that will cure your petitioner”.
The District Judge rendered judgment in favor of plaintiff for his support in the sum of $450.00 per month commencing September 1, 1961. Plaintiff prosecutes this appeal seeking to have the award increased to $1,750.00 per month. The defendant father answered the appeal contending that the award should be decreased, but waived this contention in argument before this Court.
The evidence clearly shows that the son is without funds and incapable of gainful employment on account of illness. He is presently suffering from “schizophrenic reaction” and is subject to episodic periods of euphoria inducing suicidal attempts. He has attempted suicide on several occasions and in fact throughout the proceedings in this case the plaintiff son has been confined to Touro Infirmary in New Orleans undergoing treatment for the physical effects of his latest suicidal attempt.
The defendant father concedes that his son is seriously ill mentally and that he requires prolonged medical and psychiatric treatment. Moreover, the defendant father does not dispute the legal liability to maintain his son imposed upon him by the Louisiana Civil Code (LSA-R.C.C. 229 through 232).
The only question at issue here is the amount of the award.
The testimony of plaintiff’s psychiatrist, Dr. Andrew J. Sanchez, Jr., is uncontradict-ed, and fully supported by the opinions of three other psychiatrists, that unless plaintiff gets the proper and necessary hospital' zation and psychotherapy he will succeed in killing himself. According to these psychiatrists purely custodial and supportive care such as may be had in public institutions and most hospitals will do plaintiff no good. They concur that he must have topnotch private hospitalization where he can receive intensive psychotherapy and rehabilitative treatment over a considerable period of time.
Dr. Sanchez puts it thus:
“ * * * Now he has been in the one private hospital; he’s been to the Southeast Louisiana Hospital. It is my impression that there are only a few private hospitals in this country that can adequately treat a case such as this with any hope of curing him, actually curing him. There are many cases where he can get custodial and supportive care, medication, tranquillizers, occupational therapy, rehabilitation therapy and all of this. However, this case is so complicated that that type of approach is definitely not going to work. It’s going to be nothing but a matter of custodial care. He will have to go in the topnotch hospital where he gets topnotch care and attention from well trained people over a long period of time, in a place where he’s not going to be changed from one doctor to another, such as often happens at the State hospitals. In addition to this, he will have to be started on a program of intensive vocational rehabilitation while he’s in the hospital as a place to stay and be treated while he may be attending some sort of class, some sort of vocational class during the day. As I see it, that has to be converted at the same psycho-therapy, psycho-therapic vocational rehabilitation. The whole thing has to be done this way. With this program he has a 50-50 chance of surviving. Without it the chances are excellent that he will kill himself.”
Dr. Sanchez mentioned the Menninger Clinic in Topeka, Kansas, and Chestnut Lodge in Maryland as being among the very few hospitals in this country capable of giving the required treatment.
He estimated that the time required for treatment would be four years, during the first year of which plaintiff should have *349 total hospitalization, the second year the patient might have progressed enough to get a job on the outside but would have to live in the hospital, the third and fourth years he would be required to have outpatient treatment.
Dr. Sanchez gave it as his opinion that with the proper treatment in one of the topnotch hospitals over the period of time required there would be a 50-50 chance of curing plaintiff, but without such treatment plaintiff would become a hopeless custodial patient. Even with the best of care in the best of hospitals Dr. Sanchez testified that plaintiff might succeed in killing himself at any time.
Dr. Sanchez estimated that the cost of hospitalization indicated would be from $1,200.00 to $1,500.00 per month — “closer to $1,500.00” — and that in addition there would be psychiatric fees which would probably run $3,000.00 per year. He thought that the cost of hospitalization might be decreased somewhat after plaintiff arrived at the out-patient stage, but gave no estimate of the possible decrease.
Having seen the needs of the plaintiff we must now consider the ability of the defendant father to pay.
“Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it.” LSA-R.C.C. 231.
Charles F. Elchinger, the father, made a complete, detailed and documented disclosure of his financial condition. He owns and operates a brass foundry. He owns the equipment and the property on which the foundry is situated. He also owns the residence in which he and his present wife and her children by a former marriage reside. He owns a fishing camp, thirty shares of homestead stock valued at $3,-000.00, a share of stock in the Colonial Country Club (but has resigned his membership), a share of New Orleans Athletic Club Stock, a 1956 Cadillac automobile, cash ;n bank $600.00 and some life insurance.
Mr. Elchinger testified that he has a drawing account of $200.00 per week from his business and in addition that he draws $30.00 to $45.00 per week which is entirely expended for business entertainment. He receives $273.00 per month rental from a portion of his business property.
The land and buildings occupied by the foundry are mortgaged to the Whitney Bank for $55,000.00. In addition thereto he has another loan at that bank for $16,500.00 on an unsecured 90 day personal note which sum was borrowed for his business.
Mr. Elchinger testified that his business had a net loss for the year 1960 of $10,878.-00 and that from all indications the loss will be substantially the same for the year 1961. The earned income from his business has diminished from a profit of approximately $20,900.00 in 1957 to the loss of over $10,000.00 in 1960. He further testified that his net equity in the business had decreased by approximately $28,000.00 in the last three years. Clearly his foundry business is not doing well. He and his family are actually living off of capital at the present time.
Mr. Elchinger’s drawing account plus rent receipts amounts to only $1,140.00 per month against his son’s needs of $1,750.00 per month. In order to provide the $21,-000.00 needed for the first year of treatment alone Mr. Elchinger would have to liquidate some of his assets.
His assets exclusive of his business, his residence, and the cash value of his insurance have a total appraised value of less than $13,000.00. Obviously a sale of his residence (valued at $18,000.00) would accomplish nothing since he would either have to acquire another or pay rental which he can’t afford. The cash value of his insurance amounts to approximately $8,000.00 but since his son is the beneficiary under the *350 policies, their surrender would tend to hurt rather than help the son.
The conclusion is inescapable that in order to provide the long treatment recommended and necessary for his son, Mr. Elchinger Senior would have to liquidate his business and place himself in a hopeless financial condition.
The law does not contemplate that in order to comply with the requirements of the Civil Code (LSA-R.C.C. 229) a person must dispose of property which is his only source of revenue and virtually bankrupt himself. Barcelo v. Barcelo, 175 La. 398, 143 So. 354.
We do not believe that an award of anything approaching $1,750.00 per month is justified under the circumstances of this case. As a matter of fact we are of the opinion that the award of $450.00 per month made by the District Judge is rather high, but since counsel for appellee indicated in argument that his client would not ask for a reduction but would endeavor to comply with the judgment, the judgment appealed from is affirmed.
Affirmed.